SCHOOL DISTRICT NO. 10 IN ST. LOUIS COUNTY v. CHARLES PETERSON and Another.

November 3, 1898.

Nos. 11,122—(63).

Resulting Trust—Equitable Owner—Lien of Judgment against Record Owner.

N., the treasurer of a school district, converted its funds to his own use. He was succeeded by D., and a second real-estate mortgage was assigned to D., in his own name, to secure the deficit of N. The first mortgage was foreclosed, and D., in his own name, redeemed from the foreclosure sale, using for that purpose the money of the district in his hands as its treasurer, and the usual certificate of redemption was issued to him and recorded. The redemption was so made and certificate taken at the instance and with the assent of the other members of the school board. Thereafter, and while the title to the land appeared of record to be in the name of D., a judgment was duly docketed against him. *Held*, that D. never had any beneficial interest in the land; that the school district was the equitable owner thereof, by reason of a resulting trust; and that the judgment was not a lien thereon.

Same—Recording Act—Judgment Creditors.

The registry act (G. S. 1894, § 4180) places judgment creditors on the same footing as bona fide purchasers, as against unrecorded conveyances, but not as against resulting trusts, which cannot be made a matter of record.

Action in the district court for St. Louis county to quiet title to certain real estate. The cause was tried before Moer, J., without a jury, and judgment was ordered in favor of plaintiff. From the judgment entered pursuant to the order, defendant Peterson appealed. Affirmed.

*Eckman & Stevenson*, for appellant.

Appellant contends that the recording act makes a judgment a lien on all lands standing in the name of the judgment debtor, free of all rights and interests of third parties of which the judgment creditor had no notice, actual or constructive, and that the recording act places a judgment creditor on an equal footing with purchasers for value. Greenleaf v. Edes, 2 Minn. 226 (264); Dickinson v. Kinney, 5 Minn. 332 (409); Dunwell v. Bidwell, 8 Minn. 18 (34); Wilcox v. Leominster Nat. Bank, 43 Minn. 541; Martin v. Baldwin, 30 Minn. 537; Robertson v. Rentz, 71 Minn. 489. Eckman & Stevenson were assignees of the judgment without any notice, and paid a valuable consideration therefor. It has been held that the rights of an assignee of a judgment are not subject to equities existing in favor of third persons of which he had no notice when the assignment was made. Wright v. Levy, 12 Cal. 257; Hale v. First National, 50 Iowa, 642; Starr v. Haskins, 26 N. J. Eq. 414; McCotter v. McCotter, 16 Abb. Pr. 265; Murray v. Lylburn, 2 Johns. Ch. 441; Hendrickson's Appeal, 24 Pa. St. 363; Greene v. Darling, 5 Mason, 201, 214.

*R. R. Briggs*, for respondent.

The respondent's contention is that all the funds which came into the hands of defendant Daniels as treasurer he held for the school district; and, when he invested the same in the land involved in this action, he had no authority to do so; neither could the school district have given him authority. For it is obvious that neither the school district nor its trustees were authorized to divert

the school fund from its proper channel; and the act of the trustees, in using school money as was done in this case, was ultra vires. Bank v. Brainerd School Dist., 49 Minn. 106; Currie v. School Dist., 35 Minn. 163; Board of Education v. Jewell, 44 Minn. 427; Ward v. School Dist., 10 Neb. 293; Newbery v. Fox, 37 Minn. 141; Nash v. City of St. Paul, 8 Minn. 143 (172); Wolford v. Crystal Lake Cem. Assn., 54 Minn. 440; School Dist. v. Roach, 43 Minn. 495; School Dist. v. Thompson, 5 Minn. 221 (280); Jenness v. School Dist., 12 Minn. 337 (448); Ryan v. School Dist., 27 Minn. 433. Since the land in question was obtained by, and the title thereto taken in the name of, defendant Daniels, in violation of a trust, plaintiff is within the protection of G. S. 1894, § 4282, relating to resulting trusts. Bitzer v. Bobo, 39 Minn. 18.

One holding only the naked title of land has no interest in it upon which a judgment can become a lien. He has but a naked or a passive trust, and has no beneficiary interest in the land. It is well settled that, under these circumstances, a trustee has nothing upon which a judgment can ever become a lien. 1 Black, Judgm. § 421; Freeman, Ex. § 173; Carson v. Phelps, 40 Md. 73, 100; Blankenship v. Douglas, 26 Tex. 225; Mississippi v. Chicago, 58 Miss. 846; Martin v. Baldwin, 30 Minn. 537; Arnold v. Wainwright, 6 Minn. 241 (358); Siemon v. Schurck, 29 N. Y. 598, 613; Jackson v. Post, 15 Wend. 588; White v. Carpenter, 2 Paige, 217; In re Howe, 1 Paige, 125; Buchan v. Sumner, 2 Barb. Ch. 165, 207; Wilkes v. Harper, 2 Barb. Ch. 338, 350; Arnold v. Patrick, 6 Paige, 316.

START, C. J.

The plaintiff is a corporation organized under the laws of the state relating to school districts. In March, 1890, Henry Nolan was its treasurer, and had converted to his own use $843 of its money. Thereafter, and prior to March 18, 1890, the defendant Jasper Daniels succeeded Nolan as the treasurer of the plaintiff. Thereupon, and on the day last named, Adele C. Nolan assigned a second mortgage on the land described in the complaint, and the note for $900 secured thereby, to Daniels, to secure the plaintiff's claim against Henry Nolan on account of such deficit. The prior

mortgage on the land for $400 and interest was duly foreclosed, and the land sold to E. F. Jewell on May 26, 1894, for $488.40. On May 27, 1895, the defendant Daniels, who was still such treasurer, by virtue of the mortgage so assigned to him, duly redeemed the land from the foreclosure sale, using for that purpose the money of the plaintiff then in his hands as its treasurer. A certificate of redemption in due form was executed and delivered by the sheriff to Daniels personally. The mortgages, the assignment, and certificate were all duly recorded, and the record title to the land, on and after such redemption, was in the name of Daniels. The mortgage to secure the plaintiff was taken in the name of Daniels, and the redemption from the first mortgage was made by him with the plaintiff's money, at the instance and with the knowledge of the other members of the school board of the plaintiff.

On July 13, 1895, a judgment for $41.55 in favor of John Bergman and against Daniels was duly docketed in the county of St. Louis, wherein the land is situated. Bergman duly assigned this judgment on July 27, 1895, to S. H. Eckman and W. J. Stevenson, who paid a valuable consideration therefor. The assignees of the judgment issued execution thereon, and levied upon the land, which was duly sold on April 4, 1896, pursuant to the judgment, execution and levy, to the defendant Peterson for $74.14, to whom the sheriff executed the usual certificate of sale, and returned the execution fully satisfied. Neither the judgment creditor nor his assignees had any notice that the plaintiff had any interest in the land until the levy was made, and the assignees purchased and paid for the judgment in reliance upon the record title. The defendant Peterson had no notice of the claim of the plaintiff to the land until after he had purchased it at the execution sale. He paid no money on such sale, but promised to pay to the assignees of the judgment the amount of his bid on demand, which he has not done. He acted in the purchase at such execution sale for and on behalf of the assignees. No redemption was ever made from this execution sale.

Upon the foregoing facts found by the trial court, its conclusions of law were that Daniels held the land in trust for the plaintiff,

and never had any interest therein except the record title; that the judgment was not a lien thereon; that Peterson acquired no title under the execution sale; and that the plaintiff is the owner of the land; and directed judgment accordingly. It was so entered, and the defendant Peterson appealed from the judgment.

The record presents two questions only for our consideration:

First. Do the facts found establish an implied or resulting trust in the land in favor of the plaintiff?

Second. If so, can the trust be enforced as against the purchaser at the execution sale?

1. Did Daniels hold the land, after he acquired the legal title by his redemption from the foreclosure sale under the first mortgage, in trust for the plaintiff? The statute (G. S. 1894, § 4280) abolishes resulting trusts where a grant is made to one person upon a consideration paid by another; but section 4282, Id., provides that this statute

"Shall not extend to cases where the alienee named in the conveyance has taken the same as an absolute conveyance in his own name, without the knowledge or consent of the person paying the consideration, or when such alienee in violation of some trust has purchased the lands so conveyed with moneys belonging to another person."

Now, the money of the school district was in Daniels' hands in trust for it, and, if he acquired the legal title to the land in question with its money in violation of the trust, he never in fact had any interest in the land, but held it in trust for the district. If it be conceded that the district could not lawfully acquire and hold real estate except for school purposes, still this would be no reason why a court of equity would not declare that Daniels held the land in trust for the district, in place of the money he had used to acquire it, in violation of his trust, and convert the land by sale into money, and thereby right the wrong, as far as possible, growing out of such violation of the original trust. If he acquired the land with the money of the district, in violation of his trust, he cannot be heard to say, for the purpose of defeating the equitable rights of the district, that it could not have acquired the legal title in the first instance.

The question whether the school district, by its board of trustees, might have taken an assignment in its own name of the mortgage to secure the deficit of Nolan, and redeem from the foreclosure sale under the prior lien, using for that purpose the money of the district, is wholly immaterial, for the fact remains that it made no attempt to do so. The only finding of the trial court as to any authority on the part of Daniels to take the money of the district, and acquire personally the legal title to the land by redemption, is to the effect that such redemption was made by him at the instance and with the knowledge of the other members of the school board. Neither the other members of the board nor the board itself could give him any authority to use the funds of the district so to acquire the land or consent thereto. All land and other property of school districts must be held in its corporate name. G. S. 1894, § 3651.

The act of Daniels in so using the money of the district being without any authority, and without the consent of the district, his act was a violation of his trust, and a trust in the land in favor of the district resulted.

2. Was the trust defeated by the title acquired under the judgment and execution sale against Daniels? We answer the question in the negative. It may be conceded that if the execution creditors had purchasd the land at the sale in payment and discharge of their judgment, without notice of the equitable title of the school district, they would have been bona fide purchasers, within the meaning of G. S. 1894, § 4283, which provides:

"No implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration and without notice of such trust."

But the findings of fact in this case show that neither the execution creditors, nor Peterson, in whose name the land was purchased for them, were purchasers for value and without notice of the trust. The latter never paid anything on his bid, and the former, at the time of the levy upon the land under the execution and before the sale, had notice of the trust. As mere judgment creditors, they are not within the protection of section 4283, the original of which

is R. S. 1851, c. 44, § 10. The words of the statute, "a purchaser for a valuable consideration," mean now just what they did when the statute was first enacted, as it has never been amended. That they did not then include judgment creditors is clear, for at that time such creditors were not within the registry laws, and the rights of such creditors were in all respects as they were at common law; that is, such as the judgment debtor had. Greenleaf v. Edes, 2 Minn. 226 (264); Banning v. Edes, 6 Minn. 270 (402). It was not until 1858 that judgment creditors were placed upon the same footing as bona fide purchasers for value as against all unrecorded instruments. P. S. 1858, c. 35, § 54. It is significant that when the registry act was so amended there was no corresponding amendment of the original of section 4283, so as to place judgment creditors on the same footing as purchasers for value without notice, as against trusts in land which arise solely by operation of law, and necessarily cannot be made a matter of record.

It is claimed, however, on behalf of the defendants, that the registry law, as amended and construed by this court, places judgment creditors on the same basis as bona fide purchasers, as against such trusts. Such is not the language of the statute, and it has never been so construed by this court. The registry law (G. S. 1894, § 4180), so far as here material, is in these words:

"Every conveyance by deed, mortgage, or otherwise, of real estate * * * not so recorded, shall be void * * * as against any attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record prior to the recording of such conveyance."

The meaning of this statute is not doubtful. It simply places attachment and judgment creditors on a footing with bona fide purchasers, as against every unrecorded conveyance by deed, mortgage or otherwise, and makes it void as against any attachment or judgment against the person in whose name the title to the land appears of record. But it does not amend, by implication or otherwise, section 4283, so as to bring such creditors within its provisions, and thereby protect them against the equitable title of a third person accruing by operation of law as a resulting trust, which

cannot be evidenced by a written instrument of any kind, recorded or unrecorded. As to such trusts, an attachment or judgment creditor remains as at common law, standing in the shoes of his judgment debtor. It is only where the judgment debtor in whose name the legal title to land appears of record has, or at some time did have, a beneficial interest therein, that a judgment against him by virtue of the registry law becomes a lien on the land appearing of record in his name, in favor of a judgment creditor without notice. In such a case, his interest in the land can only be transferred by contract of some kind,—that is, by deed, mortgage or otherwise,— and, if the record does not disclose the true title, it is because such contract is not, as it ought to be, a matter of record.

It is with reference to such cases that this court has, in the cases cited and relied on by defendant's counsel, declared, in effect, that the registry act places judgment creditors upon the same footing as bona fide purchasers, and allows their liens to attach to the lands of their debtors according to the title as it appears of record, and not as it exists in fact. Thus, in the case of Wilcox v. Leominster Nat. Bank, 43 Minn. 541, 45 N. W. 1136, it was correctly held that the equitable right to have the description of the land in a deed reformed would not displace the lien of a judgment, because in that case the judgment debtor was the actual owner of the land before the deed was made, and the equity grew out of the contract of the parties, and the judgment took precedence over the unrecorded contract. So with the other cases cited. They are all cases where the judgment debtor, at some time while the title to the land appeared of record in his name, had an actual interest therein.

Our conclusion is that where, as in this case, the title to land appears of record in the name of a judgment debtor who in fact never had any interest therein, but the whole equitable title thereto is vested, by reason of a resulting trust, in a third party, the registry law, placing judgment creditors, as against unrecorded conveyances, on the same basis as bona fide purchasers, has no application, and the judgment is not a lien on the land.

Judgment affirmed.