Mary OSIN, Appellant,

v.

Robert H. JOHNSON et al., Appellees.

No. 13432.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 25, 1957.

Decided April 11, 1957.

Mr. Ward B. McCarthy, Washington, D. C., with whom Messrs. Thomas B. Heffelfinger, W. Cameron Burton and John A. Kendrick, Washington, D. C., were on the brief, for appellant.

Mr. Ross O'Donoghue, Washington, D. C., with whom Messrs. Daniel W. O'Donoghue, Samuel Scrivener, Jr., and David S. Scrivener, Washington, D. C., were on the brief, for appellees, Perpetual Building Assn. and certain other appellees.

Mr. George Bronz, Washington, D. C., for appellee, Umbricht.

Mr. Mark P. Friedlander, Washington, D. C., was on the brief for appellee L. A. Sinclitico, and certain other appellees.

Mr. Maurice A. Guervitz, Washington, D. C., was on the brief for appellee, Hakim.

No appearance for appellee Robert H. Johnson.

Before WILBUR K. MILLER, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant, a woman of more than average business experience, agreed to sell a parcel of improved real estate to appellee Johnson and subsequently executed and delivered a deed, taking back a note for the full purchase price of $30,000. There was no down payment. Johnson represented to appellant that he would prepare, execute and record a trust on

the property to secure his purchase money note.

After delivery of the deed to him, Johnson recorded the deed but did not prepare and record the trust instrument as he had promised appellant he would do. For this breach of faith and fraud Johnson was thereafter indicted, tried and convicted and testimony in the criminal case forms part of the record in this case.

Without disclosing appellant's prior unrecorded lien against his title, Johnson borrowed $11,000 from appellee Perpetual Building Association, executing deeds of trust against the property. Later Johnson borrowed an additional $3300 on second deeds of trust from appellee Glorius. Thereafter, creditors of Johnson obtained judgments which became liens on the real estate under D.C. Code, § 15–103 (1951 ed.).[1] When foreclosure proceedings were commenced under the trust deeds executed by Johnson, appellant brought this suit for equitable relief, joining the trust holders, with the judgment creditors of Johnson subsequently intervening.

■ The trial court properly heard the case without a jury since this suit was plainly addressed to the equity jurisdiction of the court. The trial judge

found that appellant conveyed title to Johnson knowingly and in reliance on Johnson's assurances that he would record all the documents including the deed of trust which secured the purchase money note. Upon this finding the court concluded that appellee trust holders and judgment creditors had acquired interests in the property superior to that of appellant's unrecorded claim.

■ Appellant contends she did not knowingly execute and deliver the deed, and that Johnson fraudulently procured her signature on an instrument represented to be a sales contract. Cf. Baker v. Morton, 1870, 12 Wall. 150, 79 U.S. 150, 20 L.Ed. 262; Brown v. Pierce, 1868, 7 Wall. 205, 74 U.S. 205, 19 L.Ed. 134. Compare Restatement, Contracts § 494 with § 495 (1932). However, appellant's pre-litigation actions and letters expressly refute this contention and provide ample basis for the trial court's finding contrary to her testimony.[2] Nor do we find merit in appellant's other allegations of error on the part of the trial court.

**I**

The trial court apparently did not consider whether Johnson's fraudulent conduct might give rise to the imposition of a constructive trust on the real estate in appellant's favor, although appellant's

---

1. "Every final judgment at common law * * * for the payment of money from the date when the same shall be rendered, every judgment of the municipal court when docketed in the clerk's office of the District Court * * shall be a lien on all the freehold * * estates, legal and equitable, of the defendants bound by such judgment * * * in any lands, tenements, or hereditaments in the District * * *".

Appellant's Brief urges us to take judicial notice of certain facts of record in the cases of Umbricht v. Johnson, No. M–7187–55, Municipal Court of District of Columbia, and Hakim v. Johnson, No. 771–55, United States District Court for the District of Columbia, to wit: Umbricht sold Johnson an Oldsmobile car taking Johnson's note for $1875, against which Johnson later paid $400. Hakim sold a Cadillac car to Johnson taking

the latter's note for $4,500 upon which he later defaulted.

It would appear from the nature of these transactions that neither judgment creditor dealt with Johnson in reliance on the state of the record title as to the realty.

2. The trial judge, in finding number 7, recited: "Plaintiff [Mrs. Osin], shortly after [the date she executed and delivered the deed], sought, and received, return of her deposits with the several utility companies for service to the aforesaid houses. She agreed that defendant Johnson should receive the rents for said properties thereafter and she no longer received them herself. She made no further efforts to sell the property and later went to Florida from which place she wrote letters on March 30, 1955, stating that she had sold the properties and had received back a purchase money deed of trust."

prayer for equitable relief, while not specifically requesting this remedy, was sufficiently broad to enable a court of equity to impress a trust upon the property.[3]

A constructive trust is a purely equitable device which can be applied with great flexibility.[4] It arises by operation of law from the occurrence of an unconscionable act for which no traditional relief is available. A constructive trust can be imposed wherever one unfairly holds title or a property interest and where the holder would be unjustly enriched if permitted to retain such interest. Specifically, the acquisition of property through the fraudulent misrepresentation of a material fact has been held sufficient grounds to fasten a constructive trust on the property. Howard v. Howe, 7 Cir., 1932, 61 F.2d 577, certiorari denied, 1933, 289 U.S. 731, 53 S.Ct. 527, 77 L.Ed. 1480. Since the District Court in the instant case found that appellant was induced to convey her title to the real estate by a fraudulent promise of Johnson that he would execute and record a deed of trust, the court could have properly considered whether, under all the circumstances, a constructive trust should have been imposed. It thus becomes necessary to consider whether the existence of a constructive trust would give appellant a superior claim to the interests of the trust holders and Johnson's judgment creditors,

should it be found that a constructive trust exists.

## II

We turn first to the holders of the first and second deeds of trust. Whatever the nature of appellant's interest, the District Court was correct in holding the fraud in the relationship between appellant and Johnson did not give appellant a claim superior to that of the trust holders who occupy the position of bona fide purchasers. Colorado Coal and Iron Co. v. United States, 1887, 123 U.S. 307, 314, 8 S.Ct. 131, 31 L.Ed. 182; Davison v. Morgan, 1931, 60 App.D.C. 161, 50 F.2d 311.

The record demonstrates, and the lower court so found, that the holders of the trust deeds were innocent purchasers for value without notice of appellant's prior equity, and thus they clearly fall within the purview of the recording act, D.C. Code, § 45–501 (1951 ed.), protecting bona fide purchasers against unrecorded conveyances.[5] The logical and rational basis for preferring the bona fide purchaser over the grantor of the record title holder is that as between two innocent parties, *i. e.*, appellant and the bona fide lenders such as Perpetual and other trust holders, appellant must yield to those who in good faith relied on the state of the record which her negligence allowed to exist. It would manifestly defeat the whole point of recording statutes to permit Mrs. Osin to assert her

3. Mrs. Osin's complaint "to set aside deed; for injunctive relief, accounting and other relief" concluded with a general prayer "(6) And for such other and further relief as the case may require and to the court may seem meet and proper."

4. For instances in which this court has approved the application of a constructive trust, see Harrington v. Emmerman, 1950, 88 U.S.App.D.C. 23, 186 F.2d 757; Cahill v. Bryan, 1950, 87 U.S.App.D.C. 271, 184 F.2d 277; Mandley v. Backer, 1941, 73 App.D.C. 412, 121 F.2d 875. See also Restatement, Restitution, § 166 (1937).

5. "Any deed conveying real property in the District, or interest therein * * *

executed and acknowledged and certified as provided in sections 30–216, 45–106, 45–302, 45–401 to 45–404 and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the recorder of deeds for record."

D.C.Code, § 45–601 (1951 ed.) provides that deeds of trust are to be recorded and to take effect as against "bona fide purchasers and mortgagees and creditors" in the same manner as absolute deeds under § 45–501.

admitted equities at the expense of those who relied in good faith on a state of the record title which her acts created.

■ Even in the absence of recording acts or, as discussed under point III *infra,* if the recording statute is inapplicable, a bona fide purchaser's rights have always been held superior to prior equitable interests. A purchaser for value, without notice of the facts which lead to the creation of a constructive trust, will cut off the trust beneficiary's rights. Restatement, Restitution, § 172 (1937); 4 Scott, Trusts § 468 (2d ed. 1956). Therefore, the holders of the deeds of trust would prevail over appellant even if a constructive trust were to be imposed on the property.

### III

■ The same rationale does not have equal validity when applied to judgment creditors of the fraudulent grantee. A judgment creditor possessing a statutory lien on property does not occupy a position equivalent to that of a purchaser for value and thus "if the land of the debtor is subject to equities, the judgment creditor's lien is subject to such equities." 3 Scott, Trusts § 308.1, p. 2276 (2d ed. 1956). See also Restatement, Restitution § 173, comment j (1937). As a matter of simple ordinary fairness, which is the essence of equity, there is every reason why a defrauded grantor of title should command a higher priority than creditors of the fraudulent grantee since such creditors usually do not rely on the record title in their extension of credit. The equitable considerations dictating the priority of an equitable right over subsequently acquired judgment liens was aptly summarized by this court many years ago:

"Unless precluded by the terms of some statute expressly intended to change it, the rule has always prevailed that the equity under a trust or a contract *in rem* is superior to that under a judgment lien. The claimant under the contract *in rem* has an equity to the specific thing which binds the conscience of his grantor; whilst the judgment creditor, who has advanced nothing on the faith of the specific thing, is entitled only to that which his debtor really has, at the time, or could honestly convey or encumber; his beneficial interest and nothing more." Hume v. Riggs, 1898, 12 App.D.C. 355, 367.

■ The appellee judgment creditors, however, point to the recording acts as altering the equitable rule and giving them a preference over appellant's unrecorded interest. This jurisdiction, like approximately half of the states,[6] has adopted a recording statute which specifically lists "creditors" among those classes given precedence to prior interests not recorded.[7] Despite early intimations to the contrary,[8] it is now well settled that the statutory reference to "creditors" includes a good faith judgment creditor holding a statutory lien obtained under D.C.Code, § 15-103, without the necessity of such creditor executing his lien by attachment or by "filing a bill in equity." Hitz v. National Metropolitan Bank, 1884, 111 U.S. 722, 4 S.Ct. 613, 28 L.Ed. 577; Atlas Portland Cement Co. v. Fox, 1920, 49 App.D.C. 292, 265 F. 444, 266 F. 1021. See also 4 American Law of Property § 17.29 (Casner ed. 1952); 1919, 4 A.L.R. 434. Thus, as to instruments required to be recorded *and capable of being recorded,* the recording act elevates a judgment creditor to the same legal plane as a bona fide purchaser for value.

■ But since the preference accorded a judgment lien depends upon the statute, it extends only to such interests as the statute requires to be recorded. It has long been acknowledged that re-

---

**6.** For a summary of the applicable state statutes, see 4 American Law of Property § 17.29 n. 1 (Casner ed. 1952).

**7.** See note 5 supra.

**8.** Crosby v. Ridout, 1906, 27 App.D.C. 481, 494–495. See also Arlington Brewing Co. v. Wyvill, 1910, 35 App.D.C. 589, 593; Ohio National Bank v. Berlin, 1905, 26 App.D.C. 218, 225, 227.

cording acts similar to that enacted in the District of Columbia do not apply to interests incapable of record. Where an equitable interest is not created by a written instrument or conveyance but rather arises by operation of law, such an interest "is not within the statute and is not subject to the lien of a judgment [creditor] * * *" 2 Freeman, Judgments 2043 (5th ed. 1925). Other jurisdictions have recognized that a constructive trust, by its nature not susceptible of record, is not within the reach of recording acts and thus retains priority over judgment liens. In re Rosenberg, D.C.S.D.Tex.1925, 4 F.2d 581; East St. Louis Lumber Co. v. Schnipper, 1923, 310 Ill. 150, 141 N.E. 542; School District No. 10 v. Peterson, 1898, 74 Minn. 122, 76 N.W. 1126.[9]

 This jurisdiction has never passed directly on the question whether a creditor holding a statutory lien takes preference over an earlier equity incapable of being recorded. In American Savings Bank v. Eisminger, 1910, 35 App.D.C. 51, this court held the lien of a judgment creditor equal to the lien of a bona fide purchaser and thus superior to any secret trust *capable of being recorded*, but not so recorded. This qualification of recordability was carefully and precisely delineated by the court by repetition in these words: "We say, trust capable of being placed upon record, for that is the case here. *Whether* a resulting or constructive trust, *incapable of record*, and in the assertion of which there has been no laches, would yield to the lien also, *we intimate no opinion.*" American Savings Bank v. Eisminger, supra at 55. (Emphasis added.) The case now before us gives rise to precisely the possible situation envisaged by this court in the American Savings Bank case and as to which the court would then "intimate no opinion." We say "possible situation" for it is not the function of this court to resolve whether the facts warrant the imposition of a constructive trust since appel-

lant failed to point out the possibility of such a course to the District Court. We decide only the question pointedly left open in American Savings Bank v. Eisminger, supra. For the reasons indicated above, and in line with the authority cited, we now supply that gap and hold if a new trial discloses (1) a constructive trust inherently incapable of recording and (2) no laches on the part of appellant in the assertion of her rights, that in such case Mrs. Osin's constructive trust will have priority over the judgment creditors of Johnson. But we qualify the above holding to this extent: a judgment creditor who is able to show affirmative reliance on the state of the record without notice of any infirmity should be entitled to the same standing as a bona fide purchaser. See 2 Freeman, Judgments 2043–44 (5th ed. 1925). Thus if a judgment creditor can satisfy the District Court that he, like the trust holders, extended credit on faith of Johnson's record title, he should be entitled to the same priority enjoyed by other bona fide purchasers, unless when the debt arose he had actual or constructive notice of Johnson's fraud on Mrs. Osin. D.C.Code, § 45–501 (1951 ed.).

 The judgment of the District Court also provided that appellant could elect to take a reconveyance of the property upon her returning to Johnson (for the benefit of Johnson's judgment creditors) the $680 Johnson had paid appellant on his purchase money note. We think that part of the judgment should be vacated and the ultimate disposition of the $680 abide the determination of the equities on a new trial.

The judgment below is affirmed as to the trust holders, Perpetual Building Association, Scrivener, Crowell, Laughlin, Sinclitico, Glorius and Sherman; reversed as to the intervenor judgment creditors Hakim and Umbricht, and the case is remanded for further proceedings.

Affirmed in part; reversed in part.

9. See also 3 Scott, Trusts, § 308.2 (2d ed. 1956).